UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INALFA ROOF SYSTEMS, INC.,
a Michigan corporation,

   Plaintiff,

v.

PNA MOLDING INC.,
a foreign corporation,

   Defendant.

Case

Hon.

## VERIFIED COMPLAINT

Plaintiff, INALFA ROOF SYSTEMS, INC., by and through his attorneys, ABBOTT NICHOLSON, P.C., for his Complaint against Defendant PNA MOLDING, INC., states as follows:

### PARTIES

1. Plaintiff INALFA ROOF SYSTEMS, INC. ("INALFA") is a Michigan corporation with its principal place of business located in Oakland County, Michigan.

2. Defendant PNA MOLDING INC. ("PNA") is a foreign corporation, formerly known as Pollmann North America Inc., with its principal place of business located in Will County, Illinois.

## JURISDICTION AND VENUE

3. INALFA is a corporate citizen of the state of Michigan. PNA is a corporate citizen of the state of Illinois. The matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs. Therefore, pursuant to 28 U.S.C. § 1332, this Court has diversity jurisdiction over this matter.

4. This action is brought for a declaratory judgment, and there is actual controversy among the parties.

5. Pursuant to the General Terms and Conditions of Purchase of Inalfa Roof Systems ("Terms"), the parties have selected this Court as the forum in which to bring this action. (Terms, §31). A copy of the Terms is attached hereto as **Exhibit A** and its terms are incorporated herein by reference.

6. Also under the Terms, the Defendant has submitted to the personal jurisdiction of this Court and has waived all objections that this forum is inconvenient or any other objections. (Terms, §31).

7. Furthermore, the Defendant has continuously and systematically sold and shipped goods to Inalfa in this state and otherwise has sufficient minimum contacts with the state of Michigan.

8. Pursuant to the Terms, venue in this court is proper. (Terms, §31).

9. Venue is also otherwise proper pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

10. INALFA has issued purchase orders (or "Price Books") to PNA for the purchase of certain parts used by INALFA in manufacture of roof systems installed on vehicles manufactured by Ford Motor Company ("Ford"), General Motors Company ("GM"), and Stellantis N.V. (fka Fiat Chrysler Automobiles N.V. or "FCA") ("Stellantis"). Copies of purchase orders issued to PNA are attached hereto as Exhibit B (shipments to INALFA Michigan plant), Exhibit C (shipments to INALFA Georgia plant), and Exhibit D (shipments to INALFA Mexico plant).

11. The purchase orders issued by INALFA to PNA incorporate the Terms by reference. (See Exhibits A, B, and C).

12. PNA manufactured and shipped parts to INALFA in satisfaction of the purchase orders.

13. By manufacturing and shipping parts to INALFA, PNA entered into Purchase Contracts with INALFA. (Exhibit A, §3).

14. The Purchase Contracts between INALFA and PNA are comprised of, without limitation, any purchase order, product releases issued under the purchases order, "Quality Criteria," the Terms, and other documents specifically incorporated into or made a part of the Purchase Contract by INALFA. (Exhibit A, §1).

15. Pursuant to the Terms, a supplier warrants that it will supply parts to INALFA for the life of the related program plus 15 years. (Exhibit A, §16). Furthermore, a "[s]upplier agrees to continue to supply such parts as set forth in Inalfa's Purchase Contract and written releases until the Purchase Contract is otherwise terminated by Inalfa." (Exhibit A, § 4.5).

16. Under the Terms, pricing for the parts are firm [§9.1], are not to "increase due to Supplier's costs increases" [§9.9], and that the supplier "assumes the risk of any event or cause (whether or not foreseen) affecting such prices" including "increases in raw material costs, inflation, increases in labor and other manufacturing costs" [§9.11]. (Exhibit A, §9).

17. INALFA has issued to PNA releases for the manufacture and shipment of parts under the Purchase Contracts.

18. Notwithstanding the releases and the Terms, on March 7, 2022, PNA notified INALFA that it would cease the production and sale of parts sold under the Purchase Contracts unless price increases were accepted and paid by INALFA as to certain parts manufactured under the Purchase Contracts. The subject parts (41 different parts in total) are identified and highlighted in the attached purchase orders and the descriptions are adopted by reference. (See Exhibits B (22), C (17), and D (2)).

19. INALFA has advised PNA that it is in breach of the Purchase Contracts and requested a reversal of its actions, but PNA has elected to remain in breach and will not manufacture and ship parts. (Exhibit E).

20. PNA's breach of its obligation under the Purchase Contract(s) will cause the shutdown of the INALFA production lines and, subsequently, the shutdown of the Ford, GM, and Stellantis vehicle assembly lines.

21. On October 11, 2021, in connection with PNA's name change from Pollmann North America, Inc., Dave Lentz, on behalf of PNA, supplied Inalfa with a completed supplier information form providing updated contact information and, most germane, confirmed that **PNA accepted the Terms**. (Exhibit F).

## COUNT I
## BREACH OF CONTRACT

22. INALFA incorporates by reference the allegations contained in all preceding paragraphs of this Verified Complaint.

23. The Purchase Contracts constitutes a valid and binding contract between PNA and INALFA.

24. On April 19, 2022, PNA unequivocally declared to INALFA that it does not intend to perform under the Purchase Contracts and will not supply the 41 subject parts.

25. The termination of performance has and will damage INALFA by leaving it without a resource for parts critical to INALFA's production of roof systems used in manufacturing of Ford, GM, and Stellantis motor vehicles.

26. The termination will also have consequences beyond immediate damage to INALFA in that Ford, GM, and Stellantis assembly lines will be halted due to the lack of roof systems produced by INALFA.

27. PNA's declaration of and actual non-performance constitutes a breach of the whole contract.

28. The damages sustained by INALFA are immeasurable and beyond the $75,000.00 jurisdictional threshold of this court.

WHEREFORE, Plaintiff INALFA ROOF SYSTEMS, INC. respectfully requests that this Honorable Court award it damages against Defendant PNA MOLDING INC. in an amount established by the evidence, plus accrued interest provided under law, and so wrongfully incurred by the Plaintiff in having to bring this action, and such other further relief as this Court deems just under the circumstances.

## COUNT II
## BREACH OF CONTRACT / SPECIFIC PERFORMANCE (UCC)

29. INALFA incorporates by reference the allegations contained in all preceding paragraphs of this Verified Complaint.

30. The goods (or parts) manufactured and sold by PNA to INALFA are unique in design and specific to INALFA's needs for roof systems manufactured and sold to Ford, GM, and Stellantis. INALFA cannot readily obtain the goods elsewhere.

31. Under the Uniform Commercial Code, as adopted in Michigan, where a seller repudiates its contractual obligation, a buyer is entitled, among other relief, to specific performance of the goods to be supplied. MCL 440.2711.

32. INALFA, given PNA's breach, is entitled to specific performance of the contract to have the unique goods manufactured and delivered to INALFA under the terms of the contract(s).

WHEREFORE, Plaintiff INALFA ROOF SYSTEMS, INC. respectfully requests that this Honorable Court award it an order of specific performance against Defendant PNA MOLDING INC. for all goods to be manufactured under the Purchase Contracts until such time as each contract is fully executed or until subsequent order of the court, whichever occurs first, along with such other further relief as this Court deems just under the circumstances.

### COUNT III
### DECLARATORY RELIEF

33. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Verified Complaint.

34. PNA has denied the existence of a Purchase Contract(s) with INALFA and has outright terminated supply of parts.

35. INALFA contends (i) that there is Purchase Contract between the parties for parts, (ii) PNA does not have any contractual right to terminate the Purchase Contract or otherwise immediately terminate supply to Inalfa, and (iii) that any transition period, if PNA can terminate, shall be adequate, in INALFA's discretion, to create a bank of parts.

36. An actual, existing, and bona fide controversy exists between INALFA and PNA as to the supply relationship, including the existence of a Purchase Contract, PNA's ability to terminate the Purchase Contract or terminate supply, and the rights of the parties under this a Purchase Contract, which controversy can only be determined by a declaratory judgment.

WHEREFORE, INALFA prays for a declaratory judgment:

A. Declaring that there is a Purchase Contract(s) between the parties.

B. Declaring the rights and other legal relations of INALFA and PNA under the Purchase Contract(s).

C. Declaring that PNA does not have a contractual or other right to unilaterally terminate the supply relationship between the parties.

D. Declaring that PNA, to the extent it can terminate the contract, must continue to produce parts for a period, in INALFA'S discretion, sufficient to permit INALFA to accrue a bank of parts.

E. Granting a speedy hearing by advancing this matter on the calendar.

F. Enter preliminary and permanent injunctions enjoining PNA from unilaterally terminating the contracts and imposing its discretion upon INALFA.

G. For such other and further relief as this Court may deem just and proper in addition to the costs of this action.

Dated: April 22, 2022

Respectfully submitted,

ABBOTT NICHOLSON, P.C.

By: /s/Daniel G. Kielczewski
Daniel G. Kielczewski (P42875)
Christopher R. Gura (P58437)
Attorneys for Plaintiff
1900 W. Big Beaver Road, Ste. 203
Troy, Michigan 48084
(313) 566-2500
dgkielczewski@abbottnicholson.com
crgura@abbottnicholson.com

[Verification on next page]

## VERIFICATION

I verify under penalty of perjury that the foregoing is true and correct.

Executed on April 22, 2022.

Inalfa Roof Systems, Inc.

By: _____
Thomas D. Tocco
Its: Vice President of Purchasing, NA

4882-4851-2797, v. 1